UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIGEO, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>AUDIBLE, INC.,<br><br>    Defendant. | CASE NO. C05-464JLR<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on the motion of Defendant Audible, Inc. ("Audible") for summary judgment (Dkt. # 53). The court has reviewed the parties' briefing and supporting materials, and finds the motion suitable for disposition without oral argument. For the reasons stated below, the court GRANTS Audible's motion in part and DENIES it in part.

## II. BACKGROUND

The resurrection of an inventor thought to be deceased has derailed this otherwise routine action for patent infringement. In its prior order construing the asserted claims of the patent-in-suit, the court began its discussion of the relevant background by stating as follows: "Plaintiff Digeo, Inc. ("Digeo") is the assignee of United States Patent No. 5,734,823 (the "'823 Patent"), which covers a system for distributing electronic information from a central information bank to units on a network." Recent discoveries

ORDER – 1

have called this most basic issue into question, and have led to the instant motion for summary judgment.

Digeo acquired its rights in the '823 Patent through an assignment purchased in 2002 from the bankruptcy estate of IPDN Corporation ("IPDN"), the successor to Microtome, Inc. ("Microtome"). Microtome was the assignee named on the '823 Patent when it issued in 1998.

The '823 Patent names four inventors: Michael Saigh, Edward Chang, Douglas Brockhouse, and Hsiao-Shih ("Oliver") Chang. Edward Chang and Oliver Chang are brothers. The inventors came together more than ten years ago under the umbrella of Microtome, a venture that never achieved commercial success. The facts surrounding each inventor's role in Microtome are murky at best. For now, it is sufficient to note that Digeo claims that each inventor had a fiduciary duty and perhaps a contractual obligation to assign to Microtome any inventions that arose from the venture.

The prosecution history reflects that Edward Chang died during the inventors' pursuit of the '823 patent. The last entry indicating that Edward Chang was alive was a power of attorney document that the Patent and Trademark Office ("PTO") received on March 3, 1995. PH 560-563.[1] Edward Chang apparently signed the document on February 23, 1995. On July 25, 1996, the prosecution history reflects that someone submitted an updated power of attorney document to the PTO indicating that Edward Chang was deceased, and that Oliver Chang was the executor of his estate. PH 634-637. Oliver Chang purportedly signed the document on July 19, 1996.

---

[1]Where possible, the court has relied on the complete prosecution history that the parties provided earlier in this litigation. As each page number in the prosecution history begins with "500-," the court will cite individual pages as "PH nnn," with the three digits representing the last three digits of the page number.

ORDER – 2

Although the prosecution history contains no assignment of patent rights, the '823 patent designates Microtome as the assignee. The only indication in the prosecution history of an assignment is an issue fee transmittal that names Microtome as the patent's assignee, and states that assignment information had been "previously submitted" to the PTO. PH 672. Despite this notation, the only relevant assignment information on file with the PTO is two assignments that the PTO recorded on July 11, 2002. Boylan Decl., Ex. H. The first indicates that Oliver Chang, as the executor of Edward Chang's estate, transferred Edward's interest in the '823 Patent to Microtome. The second indicates that Oliver Chang, Mr. Saigh, and Mr. Brockhouse transferred their interests to Microtome as well. The first assignment bears the signature of "Oliver Chang" dated July 19, 1996. The second assignment bears the notarized signature of "Oliver Chang" dated July 19, 1996.[2]

These documents are forgeries. Oliver Chang attests that he did not sign the July 25, 1996 power of attorney document that declares him to be the executor of his brother's estate, and that he did not sign either of the purported assignments of his or his brother's interests in the '823 Patent. Hsiao-Shih Chang Decl. He points out that although he uses the name Oliver, he uses his legal name, Hsiao-Shih, when he signs documents. The notary who purportedly acknowledged Oliver Chang's signature on the assignment declares that although she has no specific memory of notarizing the document, she believes based on its format that she did not notarize it. Biedenstein Decl. Digeo offers no challenge to this evidence, and appears to concede that the assignment documents are forgeries. E.g., Digeo Opp'n at 1 ("[T]he documents

---

[2]The quality of the reproduction before the court makes it difficult to discern which day in July is indicated along with Oliver Chang's signature. The court adopts July 19 for purposes of this order.

ORDER – 3

assigning [Edward Chang's] patent rights to Microtome now appear to have been forged . . . .").

As additional evidence that the assignment documents are forged, the court notes that Edward Chang is not dead, nor was he dead in 1996. There is ample evidence for this proposition, including Edward Chang's appearance and testimony at a deposition in June 2006, and his sale to Audible of a license to the '823 Patent on May 19, 2006. Boylan Decl., Ex. A. In a recent deposition, Mr. Saigh claims that he was informed that Edward Chang was dead in 1996, and that he made efforts to verify this. The court need not delve into these assertions, because no one has proffered any explanation (other than forgery) for the documents in which Edward Chang's brother purportedly declares him to be dead.

Audible, now armed with a license to the patent it is accused of infringing, and a live inventor who never assigned his interest in the '823 Patent, seeks summary judgment disposing of this action on either of two independent grounds. First, Audible argues that its license from Edward Chang is a complete defense to Digeo's patent infringement claims. Second, it argues that without Edward Chang's consent, Digeo lacks standing to pursue this action. Audible also seeks attorneys' fees under 35 U.S.C. § 285.

### III. ANALYSIS

In reviewing a summary judgment motion, the court must draw all inferences from the evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

ORDER – 4

477 U.S. 317, 323 (1986). If the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial. <u>Matsushita Elect. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991). For purely legal questions, summary judgment is appropriate without deference to either party.

**A.  Digeo Does Not Have Sole Legal Title to the '823 Patent.**

    **1.  The Documents Purporting to Assign Edward Chang's Interest in the '823 Patent Are Forgeries.**

The court finds that, as a matter of law, the documents that purport to assign the interest of Edward Chang in the '823 Patent to Microtome are forgeries.[3] The court so finds because Audible has proffered evidence that Oliver Chang never signed or otherwise authorized the documents that purport to assign his brother's interest. Faced with such evidence, Digeo bears the burden to put forth evidence from which a reasonable jury could conclude that Oliver Chang actually signed the documents, or otherwise authorized them. Digeo has failed to do so. Moreover, Digeo has not sought a continuance under Fed. R. Civ. P. 56(f) to obtain evidence to dispute Oliver Chang's assertions regarding the forgery. The court therefore finds that the purported assignment of Edward Chang's interest in the '823 Patent is a forgery.[4]

---

[3] Throughout this order, the court uses the term "forgery" to express that there is no evidence that Oliver Chang signed the documents in question, authorized their creation, or that anyone associated with Microtome had reason to believe that he had authorized their creation. The court does not address the question of whether anyone committed the criminal offense of forgery.

[4] Because it is unnecessary to do so, the court declines to decide whether the purported assignment of the interests of Oliver Chang, Mr. Brockhouse, and Mr. Saigh is also a forgery.

ORDER – 5

**2.     The Forged Assignment Does Not Convey Title to the '823 Patent**.

The court must now examine the effect of the forged assignment on Digeo's ownership interest in the '823 Patent. The court is aware of no precedent that squarely addresses this question. The court takes guidance, however, from two cases that address related issues.

The court begins with the Federal Circuit's decision in Heidelberg Harris, Inc. v. Loebach, 145 F.3d 1454 (Fed. Cir. 1998). In that case, the sole inventor of the patent-in-suit had proven in a prior litigation that his 1980 assignment of the patent was invalid because of fraud and failure of consideration. Id. at 1456-57. As a result, the court in the prior litigation rescinded his 1980 assignment, effective July 31, 1991. Id. at 1457. In the eleven years between the execution of the assignment and its rescission, the assignee had licensed the patent to Heidelberg Harris. Id. at 1456. Reviewing the inventor's subsequent infringement action against Heidelberg Harris, the Federal Circuit held that the inventor had no standing to sue for infringement occurring before the date of the rescission. Id. at 1458.

In reaching its holding, the Heidelberg Harris court held that the inventor did not acquire "legal title" to the patent until the rescission. Id. The court cited Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574 (Fed. Cir. 1991), in which it had discussed the difference between "legal title" and "equitable title." Id. In Arachnid, the plaintiff established in a prior litigation that another entity had applied for and received a patent in violation of an agreement to assign the invention to the plaintiff. 939 F.2d at 1576 (noting declaratory judgment that plaintiff was the lawful owner of the patent). Unfortunately for the plaintiff, the entity had already granted defendant Merit Industries a license to its patent. Id. at 1576-77. The Federal Circuit held that legal title to the patent passed to the plaintiff only when the declaratory judgment issued. Id. at 1579.

ORDER – 6

The court also held that even though the declaratory judgment was retroactive by its terms, it could not retroactively convey legal title. Id.; see also id. at 1576 (quoting declaratory judgment stating that plaintiff "is hereby declared and decreed *to have been and to be* the lawful owner of all right, title, and interest in [the patent]") (emphasis in Arachnid). The court noted that while the inventor's duty to assign the invention may have vested the plaintiff with equitable title to the patent, legal title could pass only on execution of a proper written instrument establishing ownership of the patent. Id. at 1578-79.

Neither Heidelberg Harris nor Arachnid applies squarely to a situation like this one, where the claim of legal title in a patent rests on a forged assignment. A loose reading of the cases might suggest that because Digeo's claim to ownership of the '823 Patent rests on facially valid documents passing legal title, it retains legal title and incidents thereof until it is deprived of legal title. The court holds otherwise.

In both Heidelberg Harris and Arachnid, the plaintiffs argued that the documents that facially vested legal title in another party were "void *ab initio*." Heidelberg Harris, 145 F.3d at 1457; Arachnid, 939 F.2d at 1578. The Arachnid court rejected the contention, noting that in order to divest the other party of legal title, the plaintiff needed first to establish that the agreement to assign all inventions applied to the patent-in-suit, and then to obtain a judgment enforcing the agreement. 939 F.2d at 1580-81. Similarly, the Heidelberg Harris court rejected the plaintiff's contention, relying on Arachnid for the principle that a rescission of an assignment does not render it void *ab initio*, but merely void as of the date of the rescission. Id. at 1458.

The court holds that, unlike the *voidable* legal titles in Heidelberg Harris and Arachnid, the assignment of Edward Chang's interest to Microtome is void *ab initio*. The court relies on the well-settled principle that, unlike the interests in Arachnid and

ORDER – 7

Heidelberg Harris, a forged title is void rather than merely voidable. See Kasey v. Molybdenum Corp. of Am., 336 F.2d 560, 568 (9th Cir. 1964) (applying California law); Nickels v. Cohn, 764 S.W.2d 124, 135 (Mo. Ct. App. 1989) ("It is well established that a forged deed is absolutely void and transfers nothing."); Day v. Case Credit Corp., 427 F.3d 1148, 1153 (8th Cir. 2005); see also Pedersen v. Bibioff, 828 P.2d 1113, 1119-20 (Wash. Ct. App. 1992) (noting that fraud in execution of document renders it void, even in the hands of a good faith purchaser).[5]  The court therefore concludes that Edward Chang never passed legal title to his interest to Microtome, and thus Digeo never acquired his interest. Edward Chang retains his legal ownership interest in the '823 Patent.

### 3. The IPDN Bankruptcy Court Neither Conveyed Sole Legal Title to the '823 Patent to Digeo Nor Adjudicated Ownership of the Legal Title.

Digeo contends that the bankruptcy court's approval of debtor IPDN's sale of the '823 Patent to Digeo conveys sole legal title, and that this court's consideration of Digeo's ownership would violate the principles of res judicata. The court disagrees.

First, Digeo has cited no authority, and the court is aware of none, for the contention that the bankruptcy court approved (or could have approved) a sale of rights that IPDN did not own. The bankruptcy court had no power to approve a sale of assets that were not part of the IPDN bankruptcy estate. See 11 U.S.C. § 541 (defining property included in bankruptcy estate); see also Comm. of Tort Litigants v. Catholic Diocese of Spokane, No. 05-CV-274, 2006 U.S. Dist. LEXIS 47828, at *39 (E.D. Wash. June 30, 2006) ("The rights of creditors to property of a debtor cannot be more than the interest of the debtor in that property."). Under proper circumstances, the bankruptcy

---

[5]The court need not decide which jurisdiction's law applies to the question of the forged assignments. In any jurisdiction, a forged title document is void *ab initio*.

ORDER – 8

court could have resolved a dispute over whether IPDN owned sole legal title to the patent, but there is absolutely no evidence that it did so or had occasion to do so in this case. Absent such evidence, the court concludes that the bankruptcy court did not approve the sale of Edward Chang's rights to Digeo.

    Second, Digeo has no support for its assertion that any judgment of the bankruptcy court is res judicata as to Edward Chang's interest in the '823 Patent. As the court has noted, there is no indication that the bankruptcy court considered Edward Chang's ownership interest, much less that it deprived Mr. Chang of his interest in a judgment on the merits. Indeed, neither Mr. Chang nor his interest in the '823 Patent had representation in the bankruptcy proceeding. The bankruptcy court proceeded under the assumption that IPDN had sole ownership of legal title to the '823 Patent. This is much different, however, from actually deciding that IPDN had ownership. Res judicata provides no defense to Digeo.

    Again, there is a dearth of authority addressing unusual circumstances like those before the court, but at least one court facing similar questions has come to similar conclusions regarding the effect of a bankruptcy sale order on the ownership of a patent. In <u>TM Patents, L.P. v. Int'l Bus. Machs. Corp.</u>, the court ultimately concluded that the inventor of the patent-in-suit did not have ownership of the patent, and thus dismissed the infringement claims of the patent's assignee for lack of standing. 121 F. Supp. 2d 349, 367-71 (S.D.N.Y. 2000). Before reaching the question of standing, the court rejected the contention that the bankruptcy sale order passing title to the assignee disposed of the ownership question. Like this court, the <u>TM Patents</u> court held that "the Bankruptcy Court could not have passed title to the [patent-in-suit] if [the debtor] had no title to pass. <u>Id.</u> at 361 (S.D.N.Y. 2000). In addition, the court concluded that a bankruptcy court's approval of the sale of a patent was not res judicata as to the

ORDER – 9

ownership of the patent. Id. at 361-64. Digeo presents no authority or argument supporting a different legal conclusion in this case.[6]

### 4. Because Digeo Lacks Sole Legal Title to the '823 Patent, The Court Must Dismiss its Claims to the Extent it Seeks Remedies at Law.

Because Edward Chang and Digeo are, at best, joint owners of legal title to the '823 Patent, this suit cannot proceed without Mr. Chang's consent. As the Federal Circuit has noted, "all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1468 (Fed. Cir. 1998); see also Schering Corp. v. Roussel-UCLAF SA, 104 F.3d 341, 345 (Fed. Cir. 1997) ("Ordinarily, one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."); Israel Bio-Eng'g Project v. Amgen Inc., 401 F.3d 1299, 1304-05 (Fed. Cir. 2005). The rule has two exceptions. Ethicon, 135 F.3d at 1468 n.9. One applies where a co-owner waives his right to refuse to join suit. Id. The other applies where a co-owner's exclusive licensee joins suit on the co-owner's behalf. Id. Neither exception saves Digeo. There is no evidence that Edward Chang has waived any right; and his only purported exclusive licensee is Audible, an entity unlikely to join Digeo's efforts to sue it. The court therefore dismisses this action to the extent it seeks damages at law for infringement, because Digeo cannot maintain such claims without Edward Chang's consent.

### B. The Court Cannot Determine at This Stage if Digeo Has Sole Equitable Title to the '823 Patent.

Although it may not sue at law for patent infringement, Digeo can pursue equitable remedies for patent infringement if it holds equitable title in the '823 Patent.

---

[6]Digeo's reliance on the "concept of finality in bankruptcy sales" is misplaced. No one disputes the finality of the sale of IPDN's rights in the '823 Patent to Digeo. The dispute is over what IPDN's rights are, an issue that the bankruptcy court did not reach.

ORDER – 10

As the court in Arachnid noted, a plaintiff lacking legal title to a patent cannot sue for damages at law, but can pursue equitable relief if he has "equitable title." 939 F.2d at 1580. Unlike its claim to sole legal title in the '823 Patent, Digeo has at least a colorable claim to sole equitable title. It contends that Edward Chang was obligated either by express agreement or by fiduciary duty to assign his interest in the '823 Patent to Microtome, and that Audible's license from Mr. Chang is therefore invalid. See id. at 1578 (noting that proof of a duty to assign patent to plaintiff supports claim under equitable title). Neither party, however, has the evidence necessary on summary judgment to prove or disprove Digeo's claim to sole equitable title.[7]

The evidence before the court reveals that there are numerous disputes of material fact that prevent it from deciding that Edward Chang had (or lacked) a duty to assign his interest in the '823 Patent as a matter of law. Mr. Saigh's hazy recollection that there might have been an express agreement is sufficient to survive summary judgment, but is insufficient to compel the conclusion that an agreement existed. Similarly, the facts regarding Edward Chang's role in the Microtome venture prevent the court from concluding at this stage that he owed (or did not owe) a fiduciary duty to the company.

For the same reasons, the court cannot dismiss the instant action for lack of standing. A plaintiff must prove standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Bennett v. Spear, 520 U.S. 154, 167-68 (1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Digeo has provided sufficient evidence to survive a motion for summary judgment

---

[7]For the same reasons, Audible is unable to prove at this stage that its license from Edward Chang is valid.

ORDER – 11

challenging its standing, because it has, for the moment, provided sufficient evidence that it has equitable title.[8]

Although the court cannot resolve Digeo's claim to equitable ownership in the instant motion, its potential equitable ownership raises a host of issues that require additional input from the parties.

First, Edward Chang is not a party to this action, but he clearly has an interest in defending his ownership interest in the '823 Patent. For that reason, the court questions whether Mr. Chang is a necessary party under Fed. R. Civ. P. 19. If he is, the court questions whether the court's apparent lack of personal jurisdiction over him would necessitate dismissing this case for failure to join an indispensable party. In addition, although the instant motion does not require the court to address Oliver Chang's ownership interest in the '823 Patent, his absence from this action raises questions over whether the court can award complete relief.

Second, it is not apparent which parties are the proper defendants in an action for equitable relief. In Heidelberg Harris, for example, the defendant from which the plaintiff obtained equitable monetary relief was not the accused infringer, but rather the party that had fraudulently induced the plaintiff to assign his ownership of the patent. 145 F.3d at 1458. Here, Digeo must evaluate its potential claims for equitable relief and against whom those claims might lie. This evaluation might well result in parallel actions in different forums against different parties, in which case it may be appropriate to transfer this action to a different forum. Digeo may also need to amend its complaint in this action.

---

[8]The court acknowledges that the parties have had only a limited opportunity to conduct discovery regarding Digeo's claim to equitable title. The court's finding that Digeo has sufficient evidence to survive summary judgment is without prejudice to a subsequent summary judgment motion that presents different evidence.

ORDER – 12

Third, the court questions whether this court is an appropriate forum to adjudicate equitable ownership given a simultaneously pending action in the United States Bankruptcy Court for the Eastern District of Missouri. After Audible filed the instant motion, Digeo successfully moved to reopen the IPDN bankruptcy, and has initiated an adversary proceeding against all inventors of the '823 Patent as well as the bankruptcy trustee. Digeo suggests that the court "may wish to stay the present action" and await the outcome of that proceeding. For the reasons stated in Part III.A, supra, there is no basis to stay this action to the extent that it concerns Digeo's legal ownership of the '823 Patent. As to resolving Digeo's equitable ownership, however, the bankruptcy court may provide a superior forum to this one. It may have jurisdiction over parties that cannot be brought before this court. Moreover, it may provide a better forum to resolve allegations of fraud arising out of the forgery of Edward Chang's assignment.

In light of these considerations, the court directs the parties to provide additional briefing as described in Part IV, infra.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Audible's motion (Dkt. # 53) to the extent it seeks dismissal of Digeo's claims for legal damages for patent infringement. The court DENIES the motion in all other respects.

In particular, the court DENIES Audible's request that the court deem this case "exceptional" and award attorneys' fees under 35 U.S.C. § 285. Although a forged assignment and a back-from-the-dead inventor render this case "exceptional" in many ways, there is no indication that it is exceptional within the meaning of 35 U.S.C. § 285. Despite Audible's hyperbolic language, there is absolutely no evidence before the court that Digeo was aware of the exceptional circumstances of this case until Audible revealed them. Equally unpersuasive is Audible's allegation that Digeo "should have

ORDER – 13

known" about these circumstances. Absent a substantially more compelling argument that Digeo should have discovered the '823 Patent's faulty chain of title in the exercise of due diligence, the court will not further consider Audible's request for attorneys' fees. The court also cautions Audible to refrain from making unsupported assertions of fraud. The court agrees that there is ample evidence of fraud before the court – but none of it implicates Digeo as anything other than a duped purchaser of a patent.

The court directs the parties to meet and confer within two weeks to discuss the best means of resolving Digeo's claim for equitable ownership of the '823 Patent, and addressing the concerns the court raised in Part III.B of this order. By September 22, 2006, Digeo shall submit a supplemental brief of no more than 12 pages that addresses these concerns and proposes a means of resolving them. Digeo should consider whether it is appropriate to stay this action, bifurcate it to address Digeo's equitable ownership before addressing other issues, or dismiss or transfer this action. Audible may submit a responsive brief by October 6, 2006, subject to the same page limit. If they prefer, the parties may stipulate to an expedited briefing schedule.

Pending these submissions, the court STRIKES all pending deadlines, including the trial date. The court directs the parties to stay all discovery in this action pending further order of the court.

Dated this 24th day of August, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 14