UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIGEO, INC., <br><br> Plaintiff, <br><br> v. <br><br> AUDIBLE, INC., <br><br> Defendant. | CASE NO. C05-464JLR <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the court on the motion of Edward and Oliver Chang to intervene (Dkt. # 87), and a motion from Plaintiff Digeo, Inc. ("Digeo") to voluntarily dismiss this action (Dkt. # 85). Digeo has not requested oral argument on either motion. Defendant Audible, Inc. ("Audible") and the Changs have requested oral argument on the motion to dismiss. The court has reviewed the parties' briefing and supporting materials, including the supplemental briefing that the court ordered in August 2006, and finds both motions suitable for disposition without oral argument. For the reasons stated below, the court GRANTS Digeo's motion for voluntary dismissal, DENIES the Changs motion to intervene, and directs the clerk to enter judgment in this action.

ORDER – 1

tiered

## II.  BACKGROUND

In its August 24, 2006 order, the court granted summary judgment against Digeo's claim that Audible had infringed United States Patent No. 5,734,823 (the "'823 Patent"). The court incorporates that order's detailed discussion of the unusual circumstances that led the court to grant summary judgment. In summary, the court dismissed Digeo's Patent Act claims because conclusive evidence showed that Edward Chang, a co-inventor of the '823 Patent, never assigned his interest in the patent to the company from which Digeo purchased it. Without sole legal title to the patent, Digeo could not maintain a suit under the Patent Act. The court held, however, that Digeo could seek equitable remedies if it could show that it had equitable title to the patent. Because it was not necessary, the court did not decide whether Oliver Chang (who is Edward's brother and also a co-inventor of the patent) is a co-owner of the '823 Patent. The court also did not rule on the validity of licenses that the Changs issued to Audible.

When the court entered its order, Digeo, Audible, and the Changs were embroiled in a dispute in the United States Bankruptcy Court for the Eastern District of Missouri. In 2002, with the Bankruptcy Court's approval, Digeo purchased the '823 Patent from IPDN Corporation, the successor to Microtome, Inc. ("Microtome"). The Changs and the two other co-inventors of the '823 Patent worked for Microtome in the early 1990s. In July 2006, Digeo reopened the bankruptcy case, then filed an adversary proceeding against the Changs and others to establish its sole ownership of the '823 Patent. Digeo claimed, among other things, that the Changs had a duty to assign their interests in the patent to Microtome, and now owed the same duty to Digeo. On September 28, 2006, the Bankruptcy Court dismissed the adversary proceeding for lack of subject matter jurisdiction.

ORDER – 2

On October 18, 2006, Digeo moved pursuant to Fed. R. Civ. P. 41(a)(2) to voluntarily dismiss this action. Digeo requested that the court dismiss its infringement claim with prejudice, and dismiss Audible's declaratory judgment counterclaim without prejudice. The counterclaim seeks a declaration that the '823 Patent is invalid and unenforceable, but raises no concerns over Digeo's ownership of the patent.

On October 19, 2006, the Changs filed their motion to intervene. They requested leave to assert a cross-claim for declaratory judgment that they are not obliged to convey their rights in the '823 Patent to Digeo, that their license to Audible is valid, and that Digeo has no authority to pursue this action without their consent.

### III. ANALYSIS

**A.   Digeo's Motion for Voluntary Dismissal**

The court begins with Digeo's motion for voluntary dismissal under Fed. R. Civ. P. 41(a)(2). The decision to grant or deny a motion for voluntary dismissal is discretionary. Smith v. Lenches, 263 F.3d 972, 975 (9th Cir. 2001). The court should grant a motion for voluntary dismissal "unless a defendant can show that it will suffer some plain legal prejudice as a result." Id. Uncertainty over an unresolved dispute, the threat of future litigation, and the inconvenience of having to pursue a dispute in a different forum are not plain legal prejudice. Id. at 976. To ameliorate potential prejudice to the defendant, a court is permitted to condition the voluntary dismissal "upon such terms and conditions as the court deems proper." Fed. R. Civ. P. 41(a)(2).

Digeo has agreed to conditions to cure any plain legal prejudice Audible might suffer. It has agreed to dismiss its infringement claims with prejudice. Moreover, it has agreed not to assert the '823 Patent against Audible, Audible's customers, and Audible's successors, based on any products or services that Audible has manufactured, offered, or

ORDER – 3

is currently manufacturing or offering.[1]  Digeo is willing to accept dismissal of Audible's declaratory judgment counterclaim without prejudice.

Audible protests that it will suffer prejudice because Digeo can still attempt to enforce the '823 Patent against Audible if it develops new infringing products.  Even if this were prejudice, it is not prejudice that this court can cure by denying Digeo's motion for voluntary dismissal.  The prejudice arises not from dismissing Digeo's infringement claim, but rather from dismissing Audible's counterclaim for declaratory judgment.  This court cannot entertain that counterclaim, however, based merely on Audible's fear that Digeo will sue it for products that it has not yet developed.  A justiciable declaratory judgment action requires that a "putative infringer's *present* activity places it at risk of infringement liability."  Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995) (internal citation and quotation omitted).  Without some evidence of current activity that places it at risk, no court, including this one, can hear Audible's declaratory judgment counterclaim.  Id. at 1060 ("The residual possibility of a future infringement suit . . . is simply too speculative a basis for jurisdiction . . . .").

The court grants Digeo's motion for voluntary dismissal, subject to the conditions listed above.

B.  **The Changs' Motion to Intervene**

Because the voluntary dismissal will not prejudice the Changs, the court denies their motion to intervene in this action.  A court must permit intervention "of [r]ight" when the prospective intervenor "claims an interest relating to the property . . . which is

---

[1] Although there is no evidence that Digeo has formally entered a covenant not to sue Audible, the court notes that Digeo is bound by its representations in its briefing that it will not sue Audible, its customers, or its successors.  Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995).

ORDER – 4

the subject of the action" and "is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest . . . ." Fed. R. Civ. P. 24(a). The dismissal with prejudice of Digeo's claims cures any prejudice to the Changs in two ways. First, the dismissal necessarily means that Digeo cannot enforce the '823 Patent against Audible in disregard of the Changs' ownership rights or their license to Audible. Second, the dismissal of Digeo's claims with prejudice ensures that the court's prior rulings, including the ruling that Edward Chang is a co-owner of the '823 Patent, operate as an adjudication on the merits. See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001). Therefore, should the Changs wish to pursue their claim against Digeo that they retain their ownership rights in the '823 Patent, they are free to do so despite the voluntary dismissal.[2]

For the same reasons, the court declines to allow the Changs to intervene under the "permissive intervention" provision of Fed. R. Civ. P. 24(b).

**C.    Digeo's Request for Attorneys' Fees under 35 U.S.C. § 285**

Finally, the court turns to Audible's request that the court award it attorneys' fees under 35 U.S.C. § 285 ("§ 285"), which gives the court discretion to award fees to a "prevailing party" in "exceptional cases." The court retains jurisdiction to consider a request under § 285 after entering a voluntary dismissal. Highway Equip. Co., Inc. v. FECO Ltd., __ F.3d __, 2006 U.S. App. LEXIS 28740, at *7, *11-12 (Fed. Cir. Nov. 21, 2006). An accused infringer who obtains a covenant not to sue as a condition of a voluntary dismissal is a "prevailing party" under § 285. Id. at *20-21.

---

[2] Digeo, Audible, and the Changs exchange allegations of "forum shopping." The court notes that should the Changs wish to pursue their claims to partial ownership of the '823 Patent in this forum, the voluntary dismissal will not prevent them from doing so. Audible's apparent belief that this court is better suited than another court to resolve Digeo's largely undeveloped claim that the Changs owe a duty to assign their interests in the '832 Patent is mistaken.

ORDER – 5

Considering a request for fees under § 285 is a two-step process. First, the court must determine whether the prevailing party has shown by "clear and convincing evidence" that the case is "exceptional." Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1460 (Fed Cir. 1998). If the court finds the case "exceptional," then it must exercise its discretion to "determine whether attorney fees are appropriate." Id.; see also Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582 (Fed. Cir. 1985) ("A finding of such 'exceptional' circumstances does not, however, mandate an award of attorney fees.").

Here, Audible alleges that this case is exceptional because Digeo sued without having complete ownership over the '823 Patent. If an accused infringer shows by clear and convincing evidence that the patentee brought a baseless or frivolous suit, a court can deem the case exceptional. Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1329-30 (Fed. Cir. 2003). For example, if Digeo had known about the forged assignment that deprived it of complete ownership of the '823 Patent, but sued Audible nonetheless, there is no question that this would be an exceptional case. See Eltech Sys. Corp. v. PPG Indus., Inc., 903 F.2d 805, 810 (Fed. Cir. 1990) (affirming award under § 285 where district court's findings were "compatible with and only with th[e] view" that the plaintiff "knew its suit was baseless"). In this case, however, there is no evidence supporting the assertion that Digeo *knew* of the forged assignment. The court noted as much in its prior order, when it cautioned Audible to refrain from making unsupported allegations of "fraud" against Digeo. At most, Audible claims that this case is exceptional because Digeo *should have known* about the '823 Patent's faulty chain of title.

On the record before the court, Audible falls well short of proving by clear and convincing evidence that Digeo should have known that it did not have full title to the

ORDER – 6

'823 Patent. Audible argues, for example, that the lack of an assignment in the file history of the '823 Patent should have alerted Digeo to potential problems with its title. There is no evidence or argument, however, suggesting that one should expect to find an actual assignment document in the file history. As the court explained in its prior order, the file history shows that just before the patent issued, Microtome indicated that it was the sole assignee of every inventor's rights in the Patent. In 2002, when Microtome's successor entity prepared to sell the company's assets in bankruptcy, someone recorded the assignment documents with the PTO. The assignments themselves bore dates prior to the issuance of the '823 Patent.[3] At most, this suggests sloppy paperwork, not a defective title. Audible also notes that at some point before the '823 Patent issued, the Changs signed documents stating that they had no obligation to assign their patent rights. While this is certainly evidence that they had no obligation at the time they signed the documents, it is not inconsistent with a decision to assign their interests at a later time.

Audible ignores that Digeo purchased a patent that, by all appearances, had been assigned to Microtome. The '823 Patent itself, the assignments recorded with the PTO, and the file history of the patent are all consistent with this premise. Audible fails to provide a compelling answer to the following question: why would Digeo, or anyone else unaware of the forged documents, have suspected that Microtome was not the sole owner of the '823 Patent? If, as Audible suggests, Digeo should have discovered the defect in its title through the exercise of ordinary diligence, it is curious that no one else discovered the defect. The record reveals that Digeo has sued other parties for

---

[3]Audible's assertion that Digeo's discovery responses show that it did not rely on the assignment documents in assessing the ownership of the '823 Patent is meritless. Digeo reasonably interpreted the discovery request at issue to request information about Digeo's efforts to license or assign the '823 Patent, not information about assignments that occurred before Digeo purchased the patent.

ORDER – 7

infringing the '823 Patent and obtained settlements of those suits. The record reveals that Audible litigated this action for more than a year without discovering that someone had forged Edward Chang's assignment of his interest. Surely the parties that Digeo has accused of infringement, all of whom are sophisticated enterprises represented by competent patent counsel, have at least as much incentive as Digeo to discover the forgery at issue. Yet no one discovered Digeo's defective title until Audible did. While Audible insists that "ordinary diligence" would have revealed the forgery, Audible offers no evidence of what *it* did to discover the forgery. This suggests that Audible discovered the defects through extraordinary diligence.

Audible seeks additional discovery to obtain the clear and convincing evidence it needs to prove that this case is exceptional. Neither Audible nor Digeo cites authority relevant to whether it is appropriate to permit such discovery after the case has been dismissed. The court is unaware of any court of appeals that has addressed the issue, but several district courts have considered it. In Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc., 294 F. Supp. 2d 739, 741 (M.D.N.C. 2003), the court entered judgment in the accused infringer's favor, then considered whether to permit additional discovery on the "exceptional" nature of the case. The court noted that § 285 is an expression of Congress's view that attorneys' fees litigation should occur only in "rare or unusual circumstances." Id. at 743. It thus sought to confine discovery "so as not to allow fee litigation to be the tail that wags the dog." Id. at 743-44. The court chose to balance the party's discovery request against the resources that the court and parties would expend if the court permitted discovery, keeping in mind that such discovery is "strongly disfavored and normally prohibited." Id. at 744. Ultimately, the Aventis court, like several others, declined to allow additional discovery. Id. at 746; see also Get-A-Grip, II, Inc. v. Hornell Brewing Co., No. 99-1332, 2002 U.S. Dist. LEXIS 2589,

ORDER – 8

at *12-13 (E.D. Pa. Feb. 15, 2002) (denying additional discovery, noting that "a request for additional discovery requires more than a showing of what the party hopes it might gain"); Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc., No. 96-101-SLR, 1997 U.S. Dist. LEXIS 21016, at *24 n.9 (D. Del. Dec. 23, 1997) (denying additional discovery where party failed to make a prima facie showing of an exceptional case). The court is aware of no other court that has permitted discovery into § 285 allegations after the dismissal of an infringement suit.

The court declines to permit Audible to engage in further discovery. The burden on Audible to prove that this case is "exceptional" is a heavy one. This is so not merely because it would have to adduce clear and convincing evidence that Digeo should not have brought this suit, but because the court would not exercise its discretion to award fees unless Audible proved something more than negligence on Audible's behalf.[4] In every patent case, the prevailing party will, with the benefit of hindsight, be able to allege that the unsuccessful party should not have brought the case (or defended against it). If mere negligence were a sufficient basis for awarding fees, then the denouement of every patent case would be a battle over the unsuccessful party's "diligence" in deciding to pursue its litigation position. Every case could devolve into a second litigation over its "exceptional" nature, a result at odds with congressional intent. The court reiterates that, to date, Audible has adduced no evidence suggesting Digeo's negligence, much less

---

[4]It is not clear whether a court can deem a case exceptional based on the patentee's mere negligence in failing to discover that his suit was baseless before bringing it. Compare Forest Labs., 339 F.3d at 1330 ("[T]he pertinent inquiry is . . . whether [the plaintiff] knew or should have known that [it could not prevail], but pursued its infringement [claim] anyway."), with Eltech Sys., 903 F.2d at 810 (discussing "simple negligence" and "studied ignorance" as bases for deeming a case exceptional). The court declines to decide whether negligence suffices to deem a case exceptional. Instead, the court assumes that it could deem this case exceptional, and proceeds to the second step of the § 285 analysis, in which the court decides whether to exercise its discretion to award fees.

ORDER – 9

a higher degree of culpability.  The court's inquiry, then, is whether Audible's unsubstantiated speculation that further discovery would reveal evidence of Digeo's culpable conduct is sufficient to warrant the expenditure of resources that discovery would place on the parties and the court.  In this case, the court finds that the answer is no.

The court is mindful that Audible has expended substantial resources in defending itself in this litigation, and respects its desire to be made whole.  The evidence before the court suggests, however, that the culprit responsible for the waste of the resources of the parties and the court is not Digeo, but the party who perpetrated a fraud on the public by using forged documents to create the illusion of sole ownership of the '823 Patent.  The court's resolution of this action will not make Audible whole, nor will it make Digeo whole.  Allowing additional discovery would serve only to make Audible and Digeo less whole.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Digeo's motion for voluntary dismissal (Dkt. # 85), DENIES the Changs' motion to intervene (Dkt. # 87) and dismisses this action with prejudice.  The court finds that this case is not "exceptional" under 35 U.S.C. § 285.  The clerk shall enter judgment, and the judgment shall reflect the conditions imposed in this order.

Dated this 1st day of December, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 10